# UNITED STATES DISTRICT COURT

# DISTRICT OF CONNECTICUT

_____

**MARGARET STERLING**                      :
       **Plaintiff**                                  :

                         :     **CASE NUMBER:**
     **v.**                                                :

**FUTURE ELECTRONICS, INC.**            :
       **Defendant**                               :
_____:     **February 25, 2008**

# COMPLAINT

## I.    INTRODUCTION

1. This is an action for money damages and other relief as a result of Defendant's violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") and the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. § 46a-60 *et seq.* ("CFEPA").

## II.    PARTIES

2. Plaintiff Margaret Sterling ("Sterling") is an individual presently residing in Windsor Locks, Connecticut.

3. Defendant, Future Electronics, Inc. ("FEI") is a corporation with a principal place of business in Pointe Claire, Quebec, Canada.

4. Defendant employs more than 15 people, and maintains an office in Cheshire, Connecticut.

5. At all times relevant to this complaint, Sterling was employed by Defendant at it's Cheshire, Connecticut office.

**III.**   **JURISDICTION**

6.      The United States District Court for the District of Connecticut has subject matter

jurisdiction over this case under the provisions of 28 U.S.C. Sections 1331 and 1343(4)

because it asserts a claim under an Act of Congress providing for the protection of civil

rights.

7.      This Court has jurisdiction over Sterling's state law claims pursuant to 28 U.S.C. Section

1332, in that the matter in controversy exceeds the sum or value of $75,000 and is

between a citizen of Connecticut and a citizen or subject of a foreign state.

8.      In the alternative, this Court has jurisdiction over Sterling's state law claims pursuant to

28 U.S.C. Section 1367(a) under the doctrine of supplemental jurisdiction.

9.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(c), because Defendant

may be found in this district and the challenged conduct occurred in this state.

**IV.**   **PROCEDURAL REQUIREMENTS**

10.     Plaintiff has exhausted all applicable administrative remedies precedent to bringing her

claims under Title VII and CFEPA and has obtained Releases of Jurisdiction from the

Connecticut Commission on Human Rights and Opportunities and the United States

Equal Employment Opportunity Commission authorizing her to bring these claims.

**V.**   **FACTUAL ALLEGATIONS**

11.     Sterling, a female, was hired by Defendant on or about December 22, 1986 as a Sales

Representative, (a title subsequently changed to Strategic Account Manager ("SAM"))

working out of Defendant's Cheshire, Connecticut office.

12.     Sterling performed her duties well, usually meeting or exceeding expectations.

2

13.     Sterling routinely was the top salesperson in the Cheshire office, and during her last three quarters of employment was the top salesperson company-wide.

14.     In approximately May, 2004, John Malveaux ("Malveaux") became the General Manager at the Cheshire office.

15.     Upon information and belief, prior to May, 2004, Malveaux was the subject of prior complaints of sexual harassment and/or gender discrimination while employed by Defendant at other FEI offices.

16.     At the time Malveaux was transferred to the Cheshire office, there were three female SAM's under his supervision – Sterling, Marianne McGee and Ruth Toffee.

17.     In March, 2005, Malveaux terminated Ms. McGee and replaced her with a male.

18.     Shortly thereafter, Malveaux terminated Ms. Toffee, and also replaced her with a male.

19.     On at least one occasion, Malveaux stated to Patrick Rubega, Technical Sales Manager, that he intended to "get rid of" Sterling.

20.     From the time Malveaux became the General Manager at the Cheshire office, he subjected Sterling and the other women in the office to rude, harassing and demeaning conduct that was substantially different from the way that he treated his male subordinates.

21.     For example, while Malveaux frequently socialized with the male SAMs, he never invited any of the female SAMs to socialize with him.

22.     Malveaux also would include the male SAMs in golf outings or other events with manufacturers' representatives, but never invited the female SAMs to participate.

3

23.   These events with the manufacturers' representatives were important, because developing and maintaining good personal relationships with them is essential to succeeding as a SAM.

24.   While Malveaux would share business information with the male SAMs, he would not share such information with the female SAMs unless it was in the context of a branch meeting that included both male and female SAMs.

25.   Malveuax removed several accounts from Sterling after she had worked on and grown the accounts substantially, including but not limited to PQ Controls and IPC, and assigned them to male SAMs.

26.   When Sterling asked him why the accounts were being reassigned, Malveaux stated that he needed to "get more dollars" into the male SAM's account lists.

27.   Malveaux also refused to listen to Sterling's concerns, at one point telling her that "this is not Sterling Electronics, it's Future Electronics."

28.   On August 1, 2005, Malveaux attempted to give Sterling a written warning regarding her alleged failure to enter reports into the computer, submit weekly account schedules and meet monthly goals.

29.   Sterling refused to sign the warning, because the supposed areas of deficiency were false, and she had documentation to prove that they were false.

30.   As a result of this, and Malveaux's ongoing discriminatory treatment of her, Sterling complained to Defendant's Human Resources Department about her treatment by Malveaux.

31.  In this complaint, Sterling specifically stated that she was "sick and tired of being targeted because I am a woman."

32.  Defendant failed to investigate or otherwise act on Sterling's complaint.

33.  Malveaux continued to subject Sterling to harassment and intense scrutiny over the most minute details of her job performance, far beyond anything that he did to any of the male SAMs.

34.  As a result of Malveaux's ongoing harassment and mistreatment, Sterling's working conditions became intolerable.

35.  In January of 2006, SAMs had their quarterly reviews with Jeff Brown, the Regional Vice President.

36.  During Rick Ramino's review, which was not going well, Malveaux instructed a co-worker to go into the meeting and tell him that his pregnant wife was on the phone.

37.  When Mr. Ramino left the meeting, Malveaux met with him in the men's room and instructed him to "let me do all the talking" in an effort to help Mr. Ramino get a better review.

38.  During Sterling's review with Mr. Brown, however, Malveaux was very hostile and negative towards her.

39.  On Monday, April 10, 2006, during a regularly-scheduled branch meeting, Malveaux publicly embarrassed Sterling about having not entered reports into the computer the prior week, even though she had been ill with the flu and thus out of work.

40.  Following this meeting, Malveaux told Rick Ramino and Todd Bowden to make sure that their reports were "believable."

5

41.   Malveaux then called Sterling into his office and told her that they were going to go over, "minute-by-minute," where she had been the previous week.

42.   Malveaux also told Sterling that she needed to have documentation to prove her whereabouts for every minute of the work week.

43.   Malveaux had never done anything like this with any of the male SAMs.

44.   During the course of this meeting, Malveaux instructed Sterling to drive home (an hour each way) to retrieve a file in order to prove that she had been to see a particular customer the previous week.

45.   Upon reaching her house, Sterling sent an e-mail to Defendant's Human Resources Department, again complaining about Malveaux's harassing and discriminatory treatment based upon her gender, and stating that she did not feel comfortable meeting with him under these circumstances.

46.   As with her earlier complaint, Sterling received no response to this complaint.

47.   Because of the intolerable conditions created by Malveaux's ongoing harassment and discriminatory treatment, and Defendant's failure to respond to her complaints, Sterling tendered her resignation to Jeff Brown, the Regional Vice President.

48.   Later that day, Mr. Brown called Sterling and implored her to reconsider, and asked to meet with her to try to resolve her problems with Malveaux.

49.   Sterling told Mr. Brown that she did not want to resign, that she liked working at FEI, and that she wanted to work out the situation.

50.   Sterling then rescinded her resignation and scheduled a meeting with Mr. Brown for Friday, April 14, 2006.

51. Sterling returned to work on April 11 and April 12, 2006, making sales calls on various customers.

52. At approximately 10:00 am on April 12, Sterling received a voice mail from Mr. Brown, in which he stated "I've spoken with some people, and we've decided to reconsider and accept your resignation."

53. The next day, Sterling spoke with Mr. Brown and asked him what had changed.

54. Mr. Brown told Sterling that, after talking to a few people, "it looks like you're ready to move on."

55. Malveaux subsequently replaced Sterling with a male to replace.

**VI.   COUNT ONE – GENDER DISCRIMINATION IN VIOLATION OF TITLE VII**

56. Based on the foregoing, Sterling was wilfully and intentionally harassed, discriminated against, denied earnings, constructively discharged and/or terminated as a result of her gender, in violation of Title VII.

57. As a direct and proximate result of Defendant's conduct, Sterling has sustained damages, including lost income, emotional distress, attorneys' fees and court costs.

**VII.   COUNT TWO – GENDER DISCRIMINATION IN VIOLATION OF CFEPA**

58. Based on the foregoing, Sterling was intentionally and wilfully harassed, discriminated against, denied earnings, constructively discharged and/or terminated as a result of her gender, in violation of CFEPA.

59. As a direct and proximate result of Defendant's conduct, Sterling has sustained damages, including lost income, emotional distress, attorneys' fees and court costs.

**DEMAND FOR RELIEF**

WHEREFORE, the Plaintiff claims:

1.      Compensatory damages, including damages for emotional distress;

2.      Reinstatement to former assignment or front pay in lieu thereof;

3.      Injunctive relief to cease all harassment and remedy all discrimination;

4.      Interest and costs;

5.      Statutory attorneys' fees, as permitted under Title VII and CFEPA;

6.      Punitive damages, as permitted under Title VII and CFEPA; and

7.      Such other and further relief as the Court deems just and equitable.


**JURY DEMAND**

        Plaintiff demands a trial by jury.


                                        Plaintiff, Margaret Sterling

                                        By: _____
                                                Anthony J. Pantuso, III, Esq.
                                                Federal Bar No. ct 11638
                                                The Pantuso Law Firm, LLC
                                                204 Broad Street, Second Floor
                                                Milford, CT 06460
                                                (203) 876-0000
                                                (203) 877-1839 (facsimile)
                                                apantuso@pantusolaw.com
                                                Attorney for the Plaintiffs